Perkins vs. McAuliffe and others.

PERKINS, Respondent, vs. McAULIFFE, Appellant: CONRAD and wife, imp., Respondents.

*January 13 — February 2, 1900.*

*Deeds: Consideration: Parol evidence: Foreclosure of mortgage: Home-
steads.*

1. Where a warranty deed of lands contains a clause that the premises are free and clear from all incumbrances whatever, except a certain mortgage, it does not preclude parol evidence that the grantee was to assume and pay the mortgage as a part of the purchase price of the land.

2. The mortgagor of two tracts of land sold one tract to P., who assumed and agreed to pay the mortgage. Subsequently he sold the other tract to M. In an action to foreclose the mortgage the grantee of P. claimed part of the tract purchased by him as a homestead, and asked that it be sold last under sec. 3163, Stats. 1898. *Held* that, as against persons who took title through M. under a warranty deed containing no mention of the mortgage, such homestead rights were not entitled to protection.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

For the appellant there were briefs by *Timlin, Glicksman & Conway,* and oral argument by *W. H. Timlin.*

*Samuel Howard,* for the respondent *Perkins.*

For the respondent *Adam Conrad* there was a brief by

*Nath. Pereles & Sons,* attorneys, and *G. D. Goff,* of counsel, and oral argument by *Mr. Goff.*

CASSODAY, C. J.   This action was commenced June 30, 1898, to foreclose a note and mortgage for $4,000 and interest, executed by the defendant William Mullen, May 17, 1888, and assigned to the plaintiff June 2, 1896, brought against the mortgagor and the other defendants as having, or claiming to have, some interest in or lien upon the mortgaged premises, or some part thereof, which, if any, had accrued subsequently to the lien of the plaintiff's mortgage. The premises described in and covered by the mortgage consisted of twenty acres off the east side of the W. ½ of the S. W. ¼ of section 20, and the E. ½ of the S. E. ¼ of section 19, excepting therefrom five and five-eighths acres in the southwest corner thereof, leaving seventy-four and three-eighths acres; all being in the same township and range.

The defendants John J. and *Mary McAuliffe,* his wife, answered by way of admissions, denials, and counter allegations to the effect that they had owned and occupied the lands described in section 19 ever since November 26, 1892; that the north twenty-six acres thereof constituted their homestead; and prayed judgment that the same should be last sold, and that the twenty acres in section 20 owned by the defendant *Adam Conrad* should be first sold.

The defendants *Adam Conrad* and wife answered, alleging their chain of title to the twenty acres owned by them, and the circumstances under which McAuliffe purchased; and claiming, in effect, that he and the land in section 19 were primarily liable for the payment of the mortgage, and the whole thereof.

At the close of the trial the court found as matters of fact, in effect, that November 14, 1888, the defendant William Mullen sold and conveyed, by warranty deed, to the defendants Hubert and Joseph Palmersheim the premises described

in section 19 except the five and five-eighths acres mentioned, subject to the mortgage of $4,000, which Hubert and Joseph Palmersheim had assumed and agreed to pay, with interest from the date of the deed, which deed was recorded November 22, 1888; that June 21, 1889, Joseph Palmersheim sold and conveyed his right, title, and interest to the premises described in section 19 to Hubert Palmersheim, which deed was recorded June 29, 1889; that November 26, 1892, Hubert Palmersheim and wife sold and conveyed the premises described in section 19, by warranty deed, to the defendant John J. McAuliffe for the consideration of $9,000, $5,000 of which was paid in cash and $4,000 in the mortgage now being foreclosed in this action, and that the assuming of such mortgage of $4,000 by McAuliffe was a part of such consideration; that, after such purchase, McAuliffe paid the interest on the note and mortgage to the plaintiff or her assignor up to May 17, 1897; that McAuliffe's deed was recorded June 11, 1893; that John J. McAuliffe had, ever since November 26, 1892, been the owner of the premises described in section 19, subject to the lien of such mortgage; that November 6, 1890, William Mullen sold and conveyed to his mother, Mary Mullen, by warranty deed, the twenty acres of land described in section 20, which deed was recorded November 14, 1890; that August 1, 1891, Mary Mullen conveyed the premises described in section 20, by warranty deed, to one Phillip J. Mullen, which deed was recorded September 8, 1893; that November 15, 1893, Phillip J. Mullen sold and conveyed the premises described in section 20, by warranty deed, to James Smith, which deed was recorded December 16, 1893; that November 20, 1893, James Smith and wife sold and conveyed the premises described in section 20, by warranty deed, to the defendant *Adam Conrad*, which deed was thereupon recorded; that *Adam Conrad* ever since that time had been, and still was, the owner in fee of the premises described in section 20, subject to the lien of the plaintiff's

mortgage; that there was due to the plaintiff upon the note and mortgage $4,000, with interest at seven per cent. from May 17, 1897; that the claims upon and the interest in the lands described by each and all of the respective defendants were subsequent to and subject to the plaintiff's mortgage; that John J. McAuliffe had elected and set off as a part of his homestead the north twenty-four acres of the land described in section 19, but that 'such homestead rights were subordinate to the 'lien of the plaintiff's mortgage.

And as conclusions of law the court found, in effect, that the plaintiff was entitled to the relief demanded in the complaint; that the amount due to the plaintiff upon the note and mortgage was as found; that judgment of foreclosure and sale in the usual form be entered herein, ordering and adjudging that the defendants, and all persons claiming under them or either of them, subsequent to the commencement of this action, be barred and foreclosed of all right, claim, lien, or equity of redemption in and to the mortgaged premises, except the right to redeem the same before sale as provided by law, and that the mortgaged premises be sold in three parcels in the manner provided by law, as follows: first, the land described in section 19 south of the twenty-four acres claimed as a homestead; secondly, the north twenty-four acres in section 19 so claimed as a homestead; thirdly, the twenty acres in section No. 20, as therein more particularly described; that, if the amount realized upon the sale of the first tract be not sufficient to satisfy the judgment, then the second tract should be sold; that, if the amount realized upon the sale of the first and second tracts should not be sufficient to satisfy the judgment, then the third tract should be sold.

From that part of the judgment requiring the mortgaged premises to be sold in three several parcels, in the order named, the defendant *Mary McAuliffe* brings this appeal.

Error is assigned by counsel for *Mrs. McAuliffe* because

the court adjudged that the twenty-four acres constituting a part of the homestead of herself and husband be sold before the sale of the twenty acres owned by *Adam Conrad*. This is claimed to be contrary to the statute, which provides that, when "the part of the mortgaged premises not included in the homestead can be sold separately therefrom without injury to the interests of the parties," then in that case the judgment shall direct "that the homestead shall not be sold until all the other mortgaged lands have been sold." Sec. 3163, Stats. 1898. This court has gone as far as any court in protecting the rights of parties in their homestead. *Rozek v. Redzinski*, 87 Wis. 525; *Berger v. Berger*, 104 Wis. 282. But we are not aware of any case where a court of equity has gone so far as to authorize a party to obtain a homestead for nothing, and at the expense of other parties. It is undisputed that the Palmersheims agreed to pay Mullen for both pieces of land $7,000; that they paid him in cash down $3,000, and for the balance assumed and agreed to pay the mortgage in question then upon the land. As to them, therefore, the mortgage stood as security for part payment of the purchase money. Presumably such assumption and agreement to pay the mortgage, as found by the trial court, was expressed in the deed to them from Mullen, and that deed was recorded, and so, of course, was notice to and binding upon their subsequent grantees. Notwithstanding the very unsatisfactory testimony of Mr. McAuliffe, it appears very conclusively, as the court found, that he was to pay $9,000 for the land in section 19, of which sum $5,000 was paid to Hubert Palmersheim, and for the balance he assumed and agreed to pay the $4,000 mortgage in question. Mr. McAuliffe quibbles as to the amount he was to pay. He says he paid $100 down, and took a receipt before he got the deed; that the amount to be paid would not exceed $100 per acre; that, as he figured it up, it would amount to something over $6,000, outside of any question of this mortgage;

that the deed to him recited a consideration of $9,000, but that that was not the consideration; that he was not sure whether he wrote the deed himself or not; that, if he wrote it, then he put in the $9,000 himself; that, if he told somebody else to write it, he could not remember; that he must have known at the time the deed was delivered that it recited a consideration of $9,000; and we do not understand that he anywhere denies the very direct and positive testimony of Hubert Palmersheim as to the fact that McAuliffe drew the deed himself, and inserted the amount he was to pay for the land. It is true that the deed to McAuliffe was an ordinary warranty deed, containing this clause that the premises were "free and clear from all incumbrances whatever, excepting a certain mortgage for $4,000, made and executed May 17, 1888, and recorded in the office of the register of deeds of Milwaukee county, in volume 223, on page 51." But that did not preclude evidence to the effect that McAuliffe was to assume and pay the $4,000 mortgage in question as a part of the purchase price of the land. This court has repeatedly held, in effect, that, although parol evidence is inadmissible to change or vary the terms of a written agreement or deed, yet it is admissible to show the true consideration upon which it is based, even where it differs from that expressed in the conveyance, if not inconsistent with it. *Kickland v. Menasha W. W. Co.* 68 Wis. 34; *Becker v. Knudson*, 86 Wis. 14, 18; *Beckman v. Beckman*, 86 Wis. 655, 660; *Salter v. Bank of Eau Claire*, 97 Wis. 87; *Morgan v. South Milwaukee L. V. Co.* 97 Wis. 275, 278; *Stites v. Thompson*, 98 Wis. 330. Some of these cases give as a reason for the rule that, when only a part of an entire agreement is reduced to writing, the residue may be proved by extrinsic evidence. *Beckman v. Beckman, supra*, and cases there cited. This is peculiarly so in the case of a deed, which is ordinarily an execution of only one side of the contract upon which it is based. *Becker v. Knud-*

*son*, *supra*, and cases there cited; *Mills v. C. & N. W. R. Co.* 103 Wis. 199, 200. Although the twenty-acre tract in section 20 was subject to the mortgage, yet the defendant *Adam Conrad* purchased the same, and took title by warranty deed, containing no mention of the mortgage, and apparently with no agreement or understanding that he was to assume or pay any part of the mortgage; and the same is true in respect to each of his several grantors in his chain of title back to William Mullen, who parted with the title to that piece of land nearly two years prior to McAuliffe's purchase. *Adam Conrad* testified that he was a farmer, and that he had no knowledge of the existence of the mortgage in question until the commencement of this action, and that he purchased the land relying upon the representation that his grantor had a clear title. Notwithstanding the facts detailed, it is contended that *Adam Conrad* must either pay the mortgage or allow his land to be sold for that purpose prior to any part of the *McAuliffe* homestead, and that such should be the order of sale, for the sole purpose of protecting the rights of *Mrs. McAuliffe* in the homestead, and relieving McAuliffe from paying between four and five thousand dollars of what he had thus agreed to pay as part of the purchase price of his land. To so hold would be a travesty upon equitable procedure. The statute referred to does not give to Mr. and *Mrs. McAuliffe* any such exemption from the obligation to pay what was so agreed to be paid as a part of the purchase price.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.