Jost v. Wolf, 130 Wis. 37.

JOST, Executor, Appellant, vs. WOLF and another, Respondents.

*November 7—December 4, 1906.*

*Appeal and error: Findings, when disturbed: Varying written contracts: Parol evidence: Consideration: Recitals in deeds: Conclusiveness: Vendor's lien: Gift of land.*

1. Where, on a careful examination of the evidence, it cannot be said that the findings of the trial court are antagonized by a clear preponderance of the evidence, they will not be set aside.

2. Although a written contract may be the complete and final agreement between the parties at the time of its signature, it constitutes no obstacle to the making of a new, different, or substitutionary agreement thereafter by mutual consent.

3. Such subsequent agreement would constitute a new contract, and, if it rested mainly in parol, would be provable by all ordinary means of evidence.

4. In such case, if the new oral contract consisted in the re-adoption of a plan agreed upon or discussed before the written contract, the details of such plan can be proved to throw light upon the terms of the later oral contract, although they are inadmissible to prove that the written contract did not correctly express the agreement between the parties existing at the time of its execution.

5. In an ordinary deed of conveyance the recital that there has been paid a consideration, and what that consideration was, is merely a statement of fact theoretically necessary to exist in order that the conveyance may take effect. The correctness of the recital is wholly immaterial. It binds no one as to its correctness, but may be proved, *aliunde*, to have been greater or less or different in character, so long as it is not inconsistent with the existence of some consideration to support the conveyance.

6. Where a preliminary land contract recited that the vendee was to pay $5,600 for the land, and the deed of conveyance recited a consideration of $5,500, there is thereby presented no obstacle to proof that the real consideration was $600 in money, the assumption of an existing mortgage, and an agreement by the vendee to hold the property subject to an equity in a third person to acquire the title upon payment of advances made.

7. In such case the payment of the $600 and the actual assumption of the mortgage left no debt upon which to base a vendor's lien.

8. The execution and delivery of a deed, whether to the donee or to some one for him, is an entirely sufficient completed execution of a gift of the land.

APPEAL from a judgment of the circuit court for Calumet county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Action to foreclose vendor's lien for $1,660, alleged balance of purchase of certain lands conveyed by plaintiff's testator to the defendant *George Wolf* on December 16, 1903, by a deed expressing and acknowledging receipt of consideration of $5,500, whereof $3,340 consisted in assumption of mortgage, $600 was concededly paid in cash, and the balance is claimed to be due and unpaid, the true consideration being alleged to be $5,600. It appeared that Thomas Suttner, being aged and infirm, owned an eighty-acre farm valued by different witnesses at from $4,500 to $5,500, incumbered by a mortgage of $3,340, with some accrued interest; that from time to time he solicited *John Suttner,* his son, to take over the farm and supply Thomas with a home there, which *John* for a long time was unwilling to do. Thomas Suttner thereafter proceeded to hold an auction sale of both farm and personal property, and published notices to that effect. Between the publication and the date of sale he again urged *John* to take the farm, and made proposal to him that he should have it upon assumption of the mortgage and payment of only $600, the father thereby being provided with a home during the rest of his life. To this *John* consented, concurrently with his friend, the other defendant, *George Wolf,* who undertook to supply him with the $600. It was deemed necessary, however, apparently to preserve faith with the public, that the auction sale should nevertheless be held, and the father, Thomas, insisted that at such sale the land be in form bid off by *George Wolf,* no matter at what price, that the arrangement with *John* might be carried out. *Wolf* accordingly bid at said sale, until the farm was finally struck off to him at $5,600, contrary to his own advice that it be sold to a stranger when it reached $5,300, which he considered the limit of its value. The clerk of the auction had brought with him an ordinary form of a land contract, which was filled out

in accordance with the terms of the auction sale and signed by Thomas Suttner and *George Wolf,* and the $600 was paid; the contract providing that the balance should be settled at the time of making deed. After the sale the three parties, Thomas Suttner, *John Suttner,* and *George Wolf,* together with a scrivener, met for the purpose of carrying into effect by conveyance the previous contract between Thomas and *John.* The question was then raised as to how *Wolf* was to be protected for his advancement of $600, and Thomas Suttner proposed that, instead of deeding directly to *John,* he would deed the land to *Wolf* upon *Wolf's* agreement that *John* should have the equity therein above the $600. A deed was made accordingly, except for some reason the consideration named was $5,500 instead of $5,600. No explanation of the arrangement was made to the scrivener, further than to tell him that the balance of the purchase price was all settled between the parties. The land contract was delivered up and destroyed. After such conveyance *Wolf* entered into a written agreement with *John Suttner* recognizing the latter's equity in the land or any proceeds thereof in excess of the $600 and the first mortgage. Thomas Suttner claimed the land contract to be binding and the balance of the price to be due him. Upon findings to substantially the foregoing effect, and also to the effect that no undue influence or fraud was exercised upon Thomas Suttner, the court held that there was no indebtedness for any portion of purchase price, and entered judgment dismissing the complaint, from which judgment the plaintiff, executor of Thomas Suttner, who died pending the action, appeals.

For the appellant there was a brief by *Nash & Nash,* and oral argument by *G. E. Nash.*

*J. E. McMullen,* for the respondents.

Dodge, J. After careful examination of the evidence, consisting largely as it does of testimony of witnesses of greater

or less intelligence and fairness, and varying in command of the English language, as also in capacity of expression, we cannot say, with the requisite certainty, that the trial court's findings as to the terms of the contract, or those against fraud and undue influence, are antagonized by that clear preponderance of evidence which alone can justify this court, on appeal, to set them aside. No comment we might make upon the conflicting evidence could add materially to the lucid and highly judicial analysis thereof contained in the opinion filed by the circuit judge. We must, therefore, proceed upon the established existence of the facts so found as a basis for consideration of other questions.

Appellant contends that the trial court erred in receiving and considering any parol evidence, because the land contract made on the day of the auction is the final and conclusive expression of the agreement between the parties. There is some evidence, perhaps, tending to show that the making of this writing was, to the understanding of both parties, such a matter of mere color or form, like the auction which preceded it, that insistence upon it as conclusive would work a fraud and thus bring the situation within one of the exceptions to the rule against contradicting or modifying a written instrument by parol. *Juilliard v. Chaffee,* 92 N. Y. 529; *Baird v. Baird,* 145 N. Y. 659, 663, 40 N. E. 222; *Jamestown B. C. Asso. v. Allen,* 172 N. Y. 291, 303, 64 N. E. 952. Such situation has not, however, been considered by the trial court, or intentionally declared in the findings, and we shall not find necessity to declare ourselves upon it for reasons to be stated. If we concede that the land contract must be taken as the complete and final agreement between plaintiff and *Wolf* at the time of its signature, it nevertheless constituted no obstacle to the making of a new, different, or substitutionary agreement thereafter by mutual consent. Although plaintiff had agreed to sell, and defendant to buy, this land for $5,600, it was perfectly competent for either to release the other en-

tirely or in part, or for both to agree that sale should be made, but at another or different consideration; also that the agreed price might be paid in any manner. Any such subsequent arrangement would-constitute a new contract, resting mainly in parol, and therefore provable by all ordinary means of evidence. If, as is found to be the fact, it consisted in re-adoption of a plan agreed upon or discussed before the written contract, the details of such plan could be proved to throw light upon the terms of the later oral contract, although inadmissible to prove that the written contract did not correctly express the agreement between the parties existing at the time of its execution. *Lathrop v. Humble,* 120 Wis. 331, 97 N. W. 905. Further, appellant urges that the land contract and the deed executed ten days later are but parts of one transaction, and, read together, constitute complete written expression of its terms not subject to variation by parol. This is, however, merely begging the question of fact whether they were parts of one transaction, or whether another transaction took place after the written land contract and the deed was made in execution of such later contract. This question of fact the trial court has resolved against appellant, and, as we have already said, upon sufficient evidence.

Some contention is made that the recital in the deed of a consideration of $5,500 is conclusive upon defendant and not open to dispute by parol. This contention, if sustained in this case, presents the anomaly that defendant, who did not sign the deed at all, is bound conclusively by a mere recital therein that the deed had been made for a consideration of $5,500, while the grantor, who formally executed the instrument over his seal, is not bound by the solemn avowal that the entire consideration had been paid. The position is supported by but two citations, viz., *Powers v. Spaulding,* 96 Wis. 487, 71 N. W. 891, and *Desmond v. McNamara,* 107 Wis. 126, 82 N. W. 701, neither of which cases dealt with attempted explanation of a mere recital of consideration, but

with express contractual stipulations on the part of grantees-
embodied in deeds accepted by them. In the first case the at-
tempt was to prove that an express written agreement to pay
all cost of certain improvements was limited by parol to a
fixed amount; in the second, to show a parol agreement that
the grantor should pay a certain mortgage in contradiction of
express stipulation in the deed that grantee should assume it.
The inconclusiveness of a mere deed of conveyance to exclude
other evidence of the various terms of the contract in part ex-
ecution of which it is made has been declared by this court
so often as to hardly warrant further statement. Such deed,.
on its face, shows that it is not an attempt to reduce to writ-
ing the agreement between the parties, but merely to execute-
some part of a broader agreement. A simple conveyance is-
unilateral, while a contract is, in its nature, at least bilateral.
*Perkins v. McAuliffe,* 105 Wis. 582, 81 N. W. 645; *Brader·*
*v. Brader,* 110 Wis. 423, 85 N. W. 681. Of course deeds-
vary in form, and some contain more or less expression of the-
contractual undertakings of one or both parties. As to such
subjects the written expression, like any other, is exclusive of
oral proof. *Powers v. Spaulding, supra; Desmond v. McNa--*
*mara, supra;* 2 Page, Cont. § 1205; 4 Wigmore, Ev. § 2433.
In antithesis to such expressions of that which either party
promises are those mere declarations, recitals, or acknowledg-
ments of existing facts, not contractual at all. These, while-
perhaps *prima facie* evidence of such facts, are not conclusive,.
nor exclusive of other evidence. Indeed, the rule against ex-
trinsic evidence to vary a written contract is not so much a.
rule of evidence as one of substantive law, based on the idea
that, generally, justice is promoted by holding parties bound'
when they deliberately reduce their understanding to writing,.
whatever the prior negotiation. Perhaps the best illustration
of the distinction between mere recital or acknowledgment.
of a fact and contractual stipulations is found in the cases as-
to receipts, discriminating between those which merely ac--

knowledge the fact of payment and those which involve agreements such as discharge or release. 2 Page, Cont. §§ 1201, 1202; *Twohy M. Co. v. Estate of McDonald,* 108 Wis. 21, 83 N. W. 1107; *Seeger v. Manitowoc S. B. Works,* 120 Wis. 11, 97 N. W. 485. In our ordinary deeds of conveyance the recital that there has been paid a consideration, and what that consideration was, is merely a statement of a fact theoretically necessary to exist in order that the conveyance might take effect, but which early became practically a mere immaterial fiction by reason of the rule that the grantor's seal raised a conclusive presumption of a consideration sufficient to support the instrument. Hence one cannot deny existence of some consideration in order to defeat the conveyance. To that end, however, the correctness of the recital was and is wholly immaterial, and the authorities, practically without exception, recognize that it binds no one as to its correctness, but may be proved, *aliunde,* to have been greater or less or different in character, as property or services instead of money, and the like, so long as it is not inconsistent with the existence of some consideration to support the conveyance. *Mowrey v. Vandling,* 9 Mich. 39; *Strohauer v. Voltz,* 42 Mich. 444, 447, 4 N. W. 161; *Dodder v. Snyder,* 110 Mich. 69, 67 N. W. 1101; *Harts v. Emery,* 184 Ill. 560, 566, 56 N. E. 865; *Barbee v. Barbee,* 109 N. C. 299, 13 S. E. 792; *Tolman v. Ward,* 86 Me. 303, 29 Atl. 1081; *M'Crea v. Purmort,* 16 Wend. 460; *Horner v. C., M. & St. P. R. Co.* 38 Wis. 165, 176; *Kickland v. Menasha W. W. Co.* 68 Wis. 34, 38, 31 N. W. 471; *Ohlert v. Alderson,* 86 Wis. 433, 57 N. W. 88; *Perkins v. McAuliffe,* 105 Wis. 582, 81 N. W. 645; *Cuddy v. Foreman,* 107 Wis. 519, 83 N. W. 1103; *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681; *Butt v. Smith,* 121 Wis. 566, 99 N. W. 328; *Mueller v. Cook,* 126 Wis. 504, 105 N. W. 1054. In the deed before us the recital of $5,500 consideration is entirely typical. It presents nothing of promise or contract, merely a declaration of the fact. It therefore

presents no obstacle to proof that the real consideration was $600 in money, assumption of the existing mortgage, and agreement by the grantee to hold the property subject to an equity in *John Suttner* to acquire the title upon payment of the advances made by *Wolf*. This contract, which the court, in effect, found to have been made, left no debt from *Wolf* to Thomas Suttner upon which to base a vendor's lien. The question of the legal validity of such an agreement with reference to real estate, as between *Wolf* and *John Suttner,* is of no materiality if Thomas chose to accept the promise, which, by the way, *Wolf* evinces every purpose to carry out to the satisfaction of *John*.

Some discussion occurs in the briefs as to the validity of a suggested gift to *John Suttner* by his father of $1,660 of the promised consideration for the land. In the view taken by the trial court as to the terms of the contract, and with which we concur, of course there never arose any debt from *Wolf* to Thomas Suttner, and therefore no gift of such debt. If gift at all was made, it was of the land, not of any portion of a promised price first owing to Thomas and afterward transferred to *John*. Of course the execution and delivery of a deed, whether to the donee or to some one for him, was an entirely sufficient completed execution of the gift of the land. *Albright v. Albright,* 70 Wis. 528, 36 N. W. 254; *Second Nat. Bank v. Merrill,* 81 Wis. 142, 50 N. W. 503; *Kittoe v. Willey,* 121 Wis. 548, 99 N. W. 337.

We are unable to discover any error in the proceedings or decision of the trial court.

*By the Court.*—Judgment affirmed.

The following opinion was filed January 4, 1907:

SIEBECKER, J. (*dissenting*). While I fully concur as to the legal principles upon which the decision is based, I am unable to concur in their application to the facts established

by the evidence. The ground of the decision is that the written contract for the sale of the farm by Suttner to *Wolf,* made on December 10, 1903, immediately after the auction sale, was abrogated by a subsequent parol agreement executed December 16, 1903, the date of the deed. The rule that evidence so clear and convincing as to leave no reasonable controversy on the subject is required to set aside a solemnly executed instrument for the sale of real estate is so well established and universally recognized that citation of authority is needless. In approaching the questions of the case it would be erroneous to consider that any of the negotiations which preceded and led up to the execution of the land contract on December 10, 1903, were not merged in it. It is a well-recognized rule that when parties make written agreements covering the subject of their engagements, without uncertainty as to their object and extent, it is conclusively presumed that they contain the whole thereof, and they cannot be contradicted or varied by parol evidence. That this contract between Thomas Suttner and *Wolf* for the sale of the farm included an agreement that the purchase price of the farm should be $5,600 is not in dispute. This, then, is conclusive on them unless it is subsequently altered by a new agreement. That the land contract and the consideration specified in it were intended to be binding by the parties is significantly corroborated by the declaration of *Mr. Wolf* that it was made because the old gentleman was aged and feeble, and that he wanted something to show that he purchased the land to enable him to enforce the sale in case of Suttner's death before a deed was executed. This is the strongest and most convincing proof that it expressed their engagement, and that he relied on it as expressive of the agreement they had made. But the trial court found, and this court affirms the conclusion, that the parties, mutually agreeing to a reduction of the consideration from $5,600 to $4,000, altered it by parol on the day the deed was made. This inference is, to my mind, not

warranted by any interpretation of the evidentiary facts. No change is shown or claimed to have been made before the day when the deed was executed. The witnesses testifying on this subject at the time the deed was executed were Thomas Suttner, his son *John,* August Dorn, the scrivener, and *George Wolf.* Thomas Suttner denies at every point that he remitted anything from the amount agreed upon. The defendant *George Wolf,* testifying on the subject, states: When Dorn, the scrivener, was about to draw the deed, he asked Mr. Suttner what consideration was to be inserted, and that Mr. Suttner then turned to *Wolf,* saying: "Well, how shall we put it in?" and that *Wolf* then replied: "It is yours; I have nothing to do with how much we put in;" that Suttner then said that $5,500 was the last bid before *Wolf's* and directed Dorn to insert this sum in the deed; that when the deed was drawn, providing for the assumption of the $3,400 mortgage, $600 had been paid, and that Mr. Dorn said to Suttner: "Now, Mr. Suttner, I have got some mortgage notes here and blanks; what shall I make for the rest of the purchase money, quite a little difference yet?" To this Suttner is said to have replied: "That is all settled; you have got no more to do; just finish up the deed;" and that *Wolf* then stated to Dorn: "Well, finish up the deed, and we will talk it over afterwards." They did not talk it over afterwards. This narrative of events at the time the deed was executed is in substance corroborated by the evidence of Dorn and *John Suttner,* and is all of the positive evidence on the subject of the reduction of the purchase price of the land.

The court laid stress on the transaction tending to show that *Wolf* agreed to deed the land to *John Suttner,* and on some admission of Thomas Suttner to the effect that *John* was to have the place for $4,000, as corroborative of the claim that it was understood that $4,000 was the amount agreed to be paid. If the proof were sufficient to show a change of consideration from the $5,600 contained in the written contract,

it would at most show a reduction to $5,500, the amount written into the deed, but I deem it insufficient to show that even this reduction was made. Giving the fullest weight to the positive testimony of the parties and the circumstances tending to show that a change of consideration from that expressed in the contract was considered by the parties, it seems to me wholly inadequate to overthrow the written contract, and I think the court clearly erred in holding that the written agreement was abrogated and a different consideration agreed upon by the parties. In my view the plaintiff is entitled to recover $1,600.